The case of the afternoon, people of the state of Illinois v. Abby McQuown, that's number 410-0297. For the appellate, Mr. McNeil, and for the appellate, and I've bumbled this before, Del Coleman. Maybe some day I'll remember. You may proceed. May it please the court. In August 2009, Officer Chad Larner stopped a defendant on Interstate 72 at around 3 in the afternoon around Decatur, Illinois. Officer Larner himself had received specific training in narcotics trafficking and narcotic trafficker behavior on the fact that Interstate 72 was a known drug corridor. In his training, Larner was trained to look at verbal and nonverbal behaviors from the drivers of passengers and cars that could indicate that narcotics were being trafficked. In this case, since reasonable suspicion is based on totality of the circumstances, I think it's important to go through these suspicious behaviors that Mr. Larner testified to. As he was starting to follow the defendant, Larner testified that the defendant fell below 45 mph, drastically reducing speed, which is below the minimum, made an erratic lane change without using a signal, and then as he continued to follow her, noticed that she was staring at him through the rearview mirror. Then Mr. Larner pulled up next to her in the other lane of the interstate, maintaining the same rate of speed as her, directly next to her, and she failed to make eye contact or acknowledge that anyone was beside her. This, in Larner's experience, was odd behavior. When he finally did pull the defendant over and he approached her car, he was greeted with an overwhelming scent of vanilla-scented air freshener coming from the car. There were three air fresheners hanging from the rearview mirror, as well as multiple air fresheners hanging from the air vents and turn signal. Also, there was a large bottle of spray, air freshener in the passenger seat. When Larner asked the defendant if she really liked the smell of vanilla, the defendant replied no. Among the other suspicious behaviors were, the defendant couldn't tell Larner exactly where she was going in Decatur, only that she was meeting a friend named Tommy. When he asked where Tommy lived, she said she didn't know. The defendant seemed nervous and mentioned that she was cold, even though Larner estimated the temperature to be above 100 degrees. Isn't the issue here the duration of the stop, though? Well, the trial court found that there was no reasonable suspicion, and that led to their finding that the length of the detention was unreasonable. So, I just want to establish that under the totality of the circumstances, the trial court failed to look at the totality of the circumstances, and that Larner had reasonable suspicion to detain the defendant for a canine sniff. But even if there was reasonable suspicion to detain for a canine sniff, doesn't the stop have to be for a reasonable duration of time? Yes, it does, and I argue that this was a reasonable length of time under the circumstances here. But that's exactly the opposite of what the trial court found. Yes, the trial court made that finding directly after making the finding that there was not reasonable suspicion, so I think that they definitely took the lack of reasonable suspicion into account when they decided the length of this stop was unreasonable. So, if there is more reasonable suspicion, the duration can be longer? If there was reasonable suspicion, the duration could be longer. I think the close case is People v. Perez, a third district case, where the defendant was sought for a routine traffic stop. The police officer developed a reasonable suspicion to detain her for a canine sniff, just like in the present case. And the appellate court in Perez found that the detaining of the defendant for 38 minutes, including waiting for a canine unit for 16 minutes, was not an unreasonable length of time to wait under the circumstances. Did you have any case that was as long as this one? Any case that was as long as this one? The total wait time in Perez and this one are almost exactly the same, that being 38 to 40 minutes. I thought it was longer than that in this case. Is it 47 or 57 minutes or something? I thought it was close to an hour. Well, the traffic stop concluded 10 minutes. So, including the traffic stop, it would be 50 minutes. But the traffic stop ended, and then the detention was 40 minutes, approximately, in this case. The length of the time can be attributed to the fact that the canine unit was far away from the traffic stop here. They took the canine unit 25 minutes to get there, and there was no evidence presented or any reason to believe that the canine unit was unreasonably delayed. It just took that long from wherever the canine unit was to get to the traffic stop. Well, what if it would take two or three hours for the canine to get there? I think that's a different story, but I don't think 25 is an unreasonable amount of time. What about 50? Well, I guess you have to balance it with the defendant's Fourth Amendment rights. Here, I think 25 minutes, especially if that's the normal wait time for a decatur from the police station to wherever the stop is, especially if there's reasonable suspicion involved. Like here, I think it would be unreasonable to require a canine unit to be roving around at all areas or speed to a scene just to save a few minutes. The 25 minutes here, like I said, there was no evidence that the canine unit was irrationally or unduly delayed getting to the scene, and there's evidence that as soon as they got to the scene, they performed a snip. So, I do believe that the trial court was wrong in finding that the length of the detention was unreasonable, especially since it came right after the finding, the erroneous finding that there was no reasonable suspicion, that Larner didn't have the requisite reasonable suspicion in this case. The Supreme Court in Florida v. Royer held that an investigative detention must be temporary and lasts no longer than is necessary to effectuate the purpose of the stop. And here, I think that the stop was exactly as long as it took to effectuate the purpose. The canine, there's no evidence to prove otherwise that the canine didn't go to the scene as soon as it was dispatched and make the snip, which resulted in a hit. It did take slightly longer than Perez. It took 9 minutes longer. I think the Perez defendant waited for 16 minutes and the defendant in this case waited for 25, but I don't think 9 minutes is an unreasonable extension of the 16 minutes overall to make it an unreasonable stop, especially when, like I said, Larner had the reasonable suspicion to believe that drugs were in the car. So it was your understanding that the only finding that the trial court made was that the length of the stop was unreasonable? Well, it looks as if he's unwilling to accept reasonable suspicion. But at the same time, he goes on and says, even with these factors which could show reasonable suspicion, it's almost as if that doesn't matter. Well, because the duration of the stop is too long, and the last thing, the last finding that I know is that under these facts, the court finds the state has failed to meet its burden in showing that the seizure of the defendant was sufficiently limited in duration. And he also makes note that most of what was suspicious is noted very early in the process. Right, which is required. Well, but it means that the stop really isn't, you don't measure the time from when you're done with the citation. I think you measure the time from 3-0-1, because at 3-0-1 when you make the stop, you already know, or you think this driving was unusual, the lack of eye contact when I pulled on side, beside her, the failure, or the trying to monitor me in the rearview mirror so she wants to know what it is I'm going to do. He's already suspicious. So instead of instituting anything, trying to do anything other than writing the citation, sort of taking his time and seeing what else is going to develop. I think multiple other suspicious behaviors did develop. I think that they did, but they still are all very early in the process. Right, and then he did ask for consent. It looks like he asked for 13 or 14 minutes. For 12 or 13 maximum. I would begin to feel nervous. And I can't tell you right now what might be in my car. I don't think anything that's contraband. And I also track police officers in my rearview mirror when I know that I've been going 72 instead of 65. And if they pull up alongside me, I'm wondering, should I look? Because yeah, he's probably going to gesture and go like this, like slow down. Am I going to look or not? I'm sure I look like I'm skulking and I'm suspicious. And again, he testified that he acknowledges a certain amount of nervousness in situations like this. He's done thousands of traffic stops before. And that this nervousness and this failure to acknowledge that somebody was beside her was outside of the general motor public. I don't discount that you think he failed to give sufficient credence to the reasonable suspicion that you argue arose. However, the primary factor, based on what I'm reading in his findings, is that he just thinks it's too long. The duration is too long. Again, I wonder if the trial court even needed to make that finding because he said that there was no reasonable suspicion. So I don't know why he went on to say that the length of time was too long. He might have thought he was wrong. Any length of time. I used to make, as a trial judge, I'd make decisions in the alternative because I knew the case was going to be appealed. I'd say thus and so, but even if you failed to do this. Well, I don't actually agree with you that that's what he said. Because what he said was the fact that the presence of and or from air fresheners may constitute reasonable suspicion of criminal activity beyond that of traffic violations does not conclusively resolve the matter. So it's like assuming there is a reasonable suspicion. Then he goes on and says the state bears the burden of showing that a seizure based on reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure. Directly before that is when he goes through each individual suspicious behavior and discounts them as not rising to the level of reasonable suspicion. He makes the point that the surplus of air fresheners is the most suspicious of the factors here. Did he take this under advisement? Or did he rule from the bench? I think he ruled right then. He didn't, I thought he granted, or dismissed, denied, granted the motion to suppress right then. But I may be wrong. But I think that it's important to note. I think the trial court subsequently issued a written decision and I don't think he went through all those factors then. It was after the hearing he went through all the factors but in his written decision he only really concentrated on the air fresheners as the strongest indicative of reasonable suspicion. I argue that the trial court never looked at the totality of the circumstances. It never looked at all the suspicious behaviors through the eyes of a reasonably trained police officer in that situation. And I think that would affect his finding that the length of the time was unreasonable. Again, the Supreme Court doesn't come, there's no straight line time where it becomes unreasonable. But I don't think the timeline here makes the detention unreasonable. Also, in the 12 to 13 minutes, he did ask for consent multiple times because he knew it would take a long time for the K-9 unit to get there. And also, there's testimony that he went through a consent form and went through that with defendants. So that could also attribute to the 12 minutes in between the end of the traffic stop and the calling of the K-9 unit. Again, there's no evidence that there was any delay on anybody's part. And really, no delay would have helped the state anyway. The delay only hurt them. The K-9 unit being so far away only hurt them and let the judge come to that finding. And it was erroneous to make that finding in light of the reasonable suspicion in this case. Are there any more questions? Thank you. Good afternoon. Nick with the court, counsel. Justices Kinect and Pope, I agree. From what I heard, I think you two were saying the same thing about the way the trial court approached this and the way the trial court ultimately decided this. And I had the same reading. The trial court heard the testimony, heard what I called five factors together in my brief, what I call these five factors, orally rejected four of these factors, then said, I'm taking this matter under advisement, subsequently issued a written decision, which only, which simultaneously reaffirmed his earlier oral findings, and then also said, let's deal with the air fresheners, discuss the air fresheners. And my reading of the trial court's order was, in the alternative decision, which is, I'm not sure that there's reasonable suspicion here, but even if there is, we've got a bigger problem, which is that the stop is too long. That's at least how I read it. What do you think he would have done if the officer would have called for the dog unit immediately upon, I don't know if she rolled down her window or got out of the car. He saw and smelled all the air fresheners after the way that she acted while driving. He called in and the unit got there a lot quicker. So essentially, stops the vehicle, walks up to the vehicle, calls in. He's ready to write a ticket for the right, you know, he's made a good stop, but he immediately notices this overwhelming odor. He sees the bottle, or the spray bottle. He notes the fresheners hanging from the air vents. She rubs her hand through her hair and he says, while I'm writing this ticket, I'm going to call for a drug unit. I think it would be a much closer case. I don't, I'm not sure what the... It might all be done within 15 minutes. Well, I think it would be 25 minutes because the evidence was that it took the dog 25 minutes from the time that he called. And actually, that was another point real quick. I'm not sure I understood your response to Justice Connick. No reasonable suspicion is required for a dog sniff. Right. So if the officer had a legitimate stop and called for the dog, and the dog gets there before he's done issuing the ticket, that dog can sniff. There's no reasonable suspicion whatsoever required. Except under these facts, it only took him 10 minutes to write the citation. So with the 25 minute that it took the dog to get there, it's still within an extra 15 minutes. I understand that. So I think that then that's what would have been at issue, this extra 15 minutes. So, and I think then we've got a closer case. The way I approached it in my brief was that... Well, here's what I don't understand. Why are we talking about reasonable suspicion here? The question is the duration. Right. Because no reasonable suspicion is required for the dog to sniff. Because he held her after he was done with the ticket. In order for him to hold her for even 30 seconds after he's done with the ticket, he needs to have... Well, I think we're in agreement. The issue is the duration of the stop. Right. Okay. But I guess my point is, if he doesn't have any reasonable suspicion, the duration, this court doesn't even have to reach the duration. Because he finished the ticket, he handed her the ticket, and all of these factors that he said he relied on in establishing this reasonable suspicion occurred before he handed her the ticket. Let's assume that this 10 minutes is a reasonable amount of time for him to write a ticket, and he wasn't delaying it in order to try and go fishing or something like that. Okay. Just for the sake of argument. He hands her the ticket and he says at that point, his testimony is at that point, I thought I just could have searched the car because I already had a reasonable suspicion. So he detains her based only at that point on the reasonable suspicion. So that's why I attack these five factors as not supporting reasonable suspicion. Because if there isn't, the duration, again, it could be a minute or it could be 40 minutes, which is what we had here after he handed the citation. And it doesn't matter. It's too long. But under these facts, it's clearly too long. And I think the big problem in this case is, as Justice Klinecki mentioned, this 12-13, I refer to it, I'll just refer to it as 15, just round up a little bit. This 15 minutes that he spent sort of pestering her, apparently, for permission to search. Now, the cases are clear that he's allowed to take steps to further, again, assuming a reasonable suspicion, he's allowed to take steps to sort of further his investigation to try and get to the bottom of whatever it is he suspects. Here, apparently, he suspected drug activity. Arguably, asking her for permission to search the car, again, assuming a reasonable suspicion, that's not unreasonable. Because if she says yes, and he searches it, he doesn't find drugs, presumably she goes on her way. If he does find drugs, stops over, and we're not waiting for the dog to show up. But he asks her, no. He asks her again, no. Apparently, then he shows her this pre-printed consent form, as if that's going to change her mind. I think there's some implication that he said something along the lines of, look, we're going to call the dog anyway, just sort of agreed to the search. After some point, that's a waste of time. And apparently, it was 13 minutes. I mean, that should have taken 30 seconds. It's a 12 or 13 minute waste of time. And then on top of that, we have 25 minutes to wait for the dog to show up. So I don't think this is not, it's not just the amount of time, 40 minutes to wait for the dog, plus the 10 minutes for the citation, 50 minutes total. It's not just that length of time. There's no Breitland rule that says, after this time, you're okay under here, over here, you're over. We're on the clock, start the stopwatch. We have to look at the total amount of time, but also how he spent that time. And I think this first 15 minutes, besides the total time, is really what's problematic here. Because all it served to do was extend the detention, which, as counsel noted, the Supreme Court says that's what you're not supposed to do. It's the state's burden to show that the duration was as short as possible. So the fact that it took the dog almost a half an hour to show up doesn't help. But again, it's his first 15 minutes. And if I could back up briefly and talk about reasonable suspicion just for a minute. There was some discussion in the briefs about totality of circumstances and whether the trial court approached this issue correctly or not. And I just want to make the point to this Court that I think the trial court did approach it correctly. The point that I'm trying to get across is that if you have factors that are just so unreliable, low, hunch, worthless, you can't just shove them into a totality of the circumstances and then say, well, we've got a totality of the circumstances, so we have four or five weak factors. But add it all together, that makes for a better case. So the sum of all is greater than the individual. Well, that's not the way it's supposed to work. And there was also some discussion about explaining away factors with innocent explanations. And I'd like to just give a brief example. If an officer stops someone and the person has coffee filters next to them, the officer can testify, well, these filters can be used for methamphetamine production. Let's assume that this person also has batteries and Sudafed also on the passenger seat. Well, all of those three things are common everyday items that the person, you know, batteries for a flashlight, coffee filters for coffee, Sudafed for the sniffles, whatever the case may be. But that's an appropriate totality of the circumstances because all of those three things together, assuming that the officer offers testimony which links those things with the suspected criminal conduct, which in that case would be methamphetamine production, then we have a reasonable totality of the circumstances. We don't have that kind of situation here in which we have this, she looks at me and then she doesn't look at me. Well, everyone either looks at me or doesn't look at me, so that's suspicious. She's driving on Interstate 72, therefore she's automatically suspected to be a drug courier. She's nervous. I mean, these are, it's hard to imagine broader factors to rely on. That's why I think the trial court got it right, which the only factor worth anything was the air fresheners. And the trial court said, that's not enough. Assuming it is enough, we still have the problem with the duration. And again, my argument to this court is it doesn't even need to reach the duration because there was no reasonable suspicion. But if this court finds that there was a reasonable suspicion, the duration was too long, primarily because of this time that he spent after handing the citation and prior to calling for the drug dog that served no purpose except to impermissibly extend the duration of the stop. Thank you very much. Thank you. You may proceed. Just a few quick things. So it sounded like the defendant was okay with the 25-minute length of the time when it called, the time it took for the canine unit to get there. He's mainly concerned with the 12 to 13 minutes between the end of the traffic stop and the calling of the canine unit. Like I said, there were a few, and again, this is assuming the defendant's interpretation of the timeline. Officer Larner testified that he asked a few times and explained to the defendant that it would take a while for, or it would be quicker for them to do the stop with their consent than with waiting for another officer to get there. And also there was testimony that he went over a consent form with her, and I think that's reasonable in extending it to the 12 or 13 minutes or however long it was. But that's not the point. The extension of the stop served no purpose but to harm, there was no reason for the state or the policeman to extend the stop at that point except to try to get consent. It did not benefit, it only hurt the state for him to try to extend the stop at that point as a result because of this argument now. If he would have instantly called when he developed the requisite reasonable suspicion, I guess we wouldn't be here because there would be no argument. But because he did, because he tried to get consent to make it easier for all parties, it wasn't irrationally extending the length of the stop because there was no benefit for the state to do that. He was only trying to benefit all parties for having to wait there longer, for not having to wait there longer. He did a cost-benefit analysis. Exactly. But it turned out not to be right, at least in the trial court's view. The cost-benefit analysis, it would be easier to try to get consent and this might be the kind of person that will give consent. Exactly. She refused consent and at that point, and at the point where presumably he knew it was a lost cause to try to get consent is when he called the canine unit there. Maybe in hindsight's 20-20 he should have called right at the beginning because he already had the requisite reasonable suspicion, but that isn't the way it went. Don't you think it's a bit problematic for the officer to continue to ask for consent after it's been denied? Again, maybe he asked flat out the first time, then explained himself a second time, got refused both times, then went through their consent. That doesn't seem coercive to you inasmuch as a person does not have to give consent. Right. Well, I don't think it was coercive, mainly at this point because it didn't work. I don't think he asked. He didn't twist an arm too hard. It wasn't coercive enough. He didn't twist an arm too hard because I don't think he sat there and asked, can I have consent, can I have consent, can I have consent? I don't think it went like that. In fact, I wouldn't be surprised if his estimations of when the traffic stop ended and when he called the canine unit was off. It was less than 12 or 13 minutes, but even if it was, I think that could be explained by his... Well, I think you should be allowed to round down since your opponent got to round up. We'll go at even 10, and I think there is a reason for that. If he had called the drug unit right away and it got there more quickly, he probably wouldn't be here. I think that hurts his police work. How does it hurt his police work if he calls and says how long will it take for the drug unit to get here? You said right when he stepped up to the car. Despite the fact that we've been badgering about reasonable suspicion, how many of us, there are six of us in the room, how many people have seen a car with seven or eight air fresheners hanging from the vents as well as hanging from the rear view mirror plus a bottle of spray? Assuming that was in plain sight. I mean, that is extraordinarily unusual. Right. At that point, he doesn't need reasonable suspicion if the drug unit will be there five minutes away. It might be another two-mile post-fat. Why not find out if that will take you 30 seconds? How long does it take to check? I'm not saying that's when you should...  Maybe, presumably, he wanted to get as much reasonable suspicion as he could throughout the traffic stop before he asked for consent. Thank you. Thank you. Take the matter under advice.